FILED

08/22/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0513

DA 16-0513

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 207N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MARK KAPPS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                   In and For the County of Fallon, Cause No. DC 15-001
                   Honorable and Nickolas C. Murnion, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Briana E. Kottke, Stack & Kottke, PLLC, Missoula, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
       Attorney General, Helena, Montana

       Darcy Lynn Wassmann, Fallon County Attorney, Ole Olson, Special
       Deputy County Attorney, Baker, Montana

                          Submitted on Briefs:  July 12, 2017

                                Decided:  August 22, 2017

Filed:

                                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Mark Kapps (Kapps) appeals his convictions for Sexual Intercourse Without Consent and Sexual Assault from the Sixteenth Judicial District Court, offering comprehensive arguments related to the following assertions: (1) an improper unanimity instruction subjected him to double jeopardy; (2) his trial counsel rendered ineffective assistance; (3) the prosecutor committed plain error by vouching for witnesses; (4) the District Court imposed improper sentencing conditions; and (5) reversal is required by cumulative error.

¶3 Kapps and Miranda Thomas (Miranda) lived together in Plevna, Montana, with their newborn son. Miranda worked as a housekeeper at the Sagebrush Inn in Baker, Montana, which her sister, Stephanie Craig (Stephanie), managed. The Craigs—Stephanie, her husband, and their children, C.C. (ten years old), M.C. (seven years old), and Z.C.—lived in a home attached to the Sagebrush Inn. Miranda did not have a driver's license, so Kapps regularly drove her to work. On weekends when Kapps did not go to work, he would frequently stay at the Craigs' home with his son while Miranda worked.

¶4 On August 3, 2014, Kapps spent the day at the Craig home while Miranda and Stephanie worked. In the house with Kapps were his son, as well as M.C. and C.C. The next day, M.C. told her brother, C.C., that Kapps had molested her. C.C. relayed this report to Miranda, who asked M.C. if it could have been an accident. In response, M.C. "shook her head no." Miranda then reported M.C.'s disclosure to Stephanie, and Stephanie and her husband reported it to law enforcement.

¶5 Law enforcement interviewed M.C. and Stephanie, and collected evidence from the Craig home, including a blanket. M.C. was examined at the Billings Clinic emergency room and later participated in a forensic interview with Child Protective Services. M.C. reported that Kapps had penetrated her both vaginally and anally, had shown her his penis and made her touch it until he ejaculated, and that the incidents had occurred about twenty times. Kapps was charged with one count of Sexual Assault and one count of Sexual Intercourse Without Consent, both allegedly occurring between December 26, 2013 and August 4, 2014.

¶6 At trial, the State called M.C., C.C., Miranda, Stephanie, law enforcement officers and crime lab employees as witnesses. M.C. testified that "[Kapps] stuck his hand down my pants and he showed me his D.I.C.K.," specifically, that he had touched her "private area" both "outside and inside." M.C. stated that Kapps had "tried to make [her] touch his private area" and that "white stuff" had come out onto a blanket. She testified that these incidents had occurred "[m]ore than once" and "a few times at his house and a lot at my house" and that they had begun "when I was 7." C.C. testified that he saw "[Kapps] st[i]ck

3

his hands down [M.C.]'s pants" on August 3, 2014 when peering through a pile of boxes, and that M.C. had disclosed the event to him the next day. An employee of the State Crime Lab testified that the "major component" of the sperm sample taken from the collected blanket matched Kapps' DNA profile. The jury found Kapps guilty on both felony charges.

¶7 Kapps argues that the District Court's unanimity instruction did not provide sufficient specificity, and should have informed the jury that Kapps could not be convicted of both Sexual Assault and Sexual Intercourse Without Consent for the same incident. Kapps argues that, based on the instruction given, he was subjected to double jeopardy. Kapps' defense counsel did not object to the instructions, stating he had reviewed them with Kapps and had "no issues." Thus, Kapps requests that we exercise plain error review and reverse his conviction.

¶8 Plain error review is exercised "sparingly," on a "case-by-case basis," and requires the defendant:

> (1) show that the claimed error implicates a fundamental right and (2) firmly convince this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process.

*State v. Crider*, 2014 MT 139, ¶ 30, 375 Mont. 187, 328 P.3d 612 (internal quotations omitted).

¶9 Jury Instruction No. 7 incorporated the unanimity language we suggested in *State v. Weaver*, 1998 MT 167, ¶ 39, 290 Mont. 58, 964 P.2d 713, stating "it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act or acts

4

. . . . [Y]ou must unanimously agree upon the commission of the same specific act or acts."

Jury Instruction No. 9 added that "[e]ach count charges a distinct offense. You must decide each count separately." Finally, the State articulated this standard in its closing argument:

> The last instruction I want to talk about briefly is that um, the Defendant is alleged to have done this more than once, ladies and gentlemen, so you have to agree on the—on the act before you can find him guilty [of] this right? You have to say it happened on—at least once maybe before August 3rd or more than once before August 3rd but you have to all be talking about kinda the same act so if you all agree it happened on that Sunday before that would be one act, you could find him guilty of either sexual assault or sexual intercourse without consent on that day and then you can go and say there was probably another act if it was beyond a reasonable doubt another act, you find him guilty of sexual assault of that act, okay? That's how it works.

Accordingly, we conclude that failure to exercise plain error review of this issue will not implicate Kapps' fundamental rights, or undermine the fundamental fairness of the proceeding.

¶10 Kapps' argument regarding the jury instructions is, in large part, a challenge to the sufficiency of the evidence necessary to convict him of the two separate felony charges. A defendant need not raise an objection to the sufficiency of the evidence in the trial court to preserve the issue for appellate review. *State v. Skinner*, 2007 MT 175, ¶ 21, 338 Mont. 197, 163 P.3d 399. We review such questions "to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *City of Helena v. Strobel*, 2017 MT 55, ¶ 8, 387 Mont. 17, 390 P.3d 921. M.C. testified that Kapps had touched her both inside and outside of her private area *and* made her touch him for his sexual gratification. She also testified that such incidents had "happened a few times at his

house and a lot at my house." Viewed in the light most favorable to the prosecution, M.C.'s testimony provided sufficient evidence to convict Kapps of both Sexual Intercourse Without Consent and Sexual Assault. "The jury is the sole judge of the credibility of a witness," *State v. Maxwell*, 198 Mont. 498, 503, 647 P.2d 348, 351 (1982), and evidence presented by one witness whom the jury believes is sufficient for the proof of any fact in a case. *State v. Merrick*, 2000 MT 124, ¶ 13, 299 Mont. 472, 2 P.3d 242. We conclude there was sufficient evidence for the jury to return convictions on both felonies.

¶11 Kapps also asserts that plain error was committed by the prosecutor during closing argument by improperly "vouching" for witnesses when stating Kapps was not telling the truth, while M.C. was, and by rhetorically asking the jury if Kapps' explanation was reasonable. Kapps' attorney did not object to the statements. A review of the record reveals that the comments were brief, and we conclude that the exercise of plain error review is not necessary to protect the fundamental fairness of the proceedings or Kapps' fundamental rights. *Crider*, ¶ 30.

¶12 Kapps alleges ineffective assistance of counsel (IAC) on numerous grounds, including failure of his attorney to adequately prepare for trial, failure to object, general trial error, and errors in sentencing. An IAC claim must be capable of resolution by review of the record, and we must be able to determine "why" counsel did or did not act a certain way. *State v. Howard*, 2011 MT 246, ¶ 21, 362 Mont. 196, 265 P.3d 606. Any claims of IAC that require information beyond the record for resolution cannot be addressed on appeal, but may be pursued in a postconviction relief proceeding. From the record, we

6

conclude it is unclear why Kapps' counsel took or failed to take the actions Kapps alleges as error. Accordingly, such claims cannot be addressed here, but may be raised in a postconviction proceeding.

¶13 Finally, Kapps alleges that five conditions of his sentencing are improper. First, Kapps argues that Conditions 30 and 31, which bar Kapps—absent permission from his parole officer and therapist—from possessing any material that "describes or depicts human nudity, the exploitation of children, consensual sexual acts, non-consensual sexual acts, [and] sexual acts involving force or violence" and bars viewing television shows or motion pictures "geared toward his/her sexual offending cycle, or as a stimulus to arouse deviant thoughts or fantasies (i.e., shows based on sexualization of underage girls or boys, etc.)," are unconstitutional limits on his First Amendment rights. Second, Kapps argues that Conditions 32, 33, and 40, which bar internet access and owning devices with access to online services without permission of his parole officer and therapist, and prohibit owning a phone with video, picture, or internet access, are unrealistic and unduly burdensome in today's technological world.

¶14 Montana law gives judges latitude to impose conditions on an offender's sentences that are "reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(g), MCA; *see also State v. Burch*, 2008 MT 118, ¶ 23, 342 Mont. 499, 182 P.3d 66 (holding authority to impose a sentence must be "authorized by a specific grant of statutory authority"). Such a condition may impact a "civil or constitutional right" as a "necessary condition of the sentence directed toward the

objectives of rehabilitation and the protection of society." Section 46-18-801(1), MCA. Restrictions that impact a fundamental right must be subject to strict scrutiny, requiring the State "show that the restriction furthers a compelling governmental interest and is narrowly tailored to achieve that interest." *State v. Guill*, 2011 MT 32, ¶ 67, 359 Mont. 225, 248 P.3d 826. "Rehabilitation and the protection of the victim and society are compelling governmental interests." *Guill*, ¶ 68. The District Court's reasoning that the conditions "have a nexus to the offense and are necessary for the protection of the public and rehabilitation of the Defendant" is a proper basis for imposition of Conditions 30 and 31.

¶15 Kapps does not raise a constitutional challenge to Conditions 32, 33, and 40, but rather argues that they are "overly broad and impractical given technology's necessity in modern life." The internet restrictions correspond to the subject matter restrictions of Conditions 30 and 31. Condition 40 does not prohibit Kapps from owning a cellular phone outright, but one that has internet access or the ability to make and/or store pictures and videos. Further, we note that Conditions 32 and 33 both have exceptions allowing Kapps' parole officer and therapist to authorize Kapps to have devices that access the internet, in their discretion. This ensures that Conditions 32 and 33 are not overly broad. Facially, these conditions are reasonable and appropriate limitations, given the crimes for which Kapps was convicted.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for noncitable memorandum opinions. In the

opinion of the Court, this case presents questions controlled by settled law or by the clear application of applicable standards of review. There is no cumulative error.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR